```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                FORT MYERS DIVISION
```

TIMOTHY EDWARD SIMPSON,

                 Petitioner,

vs.                               Case No. 2:08-cv-460-FtM-29SPC

SECRETARY, DOC,

                 Respondent.
_____

## OPINION AND ORDER

Petitioner Timothy Edward Simpson (hereinafter "Petitioner") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 and supporting Memorandum of Law (Doc. #2, Memorandum) on May 30, 2008[1] raising one ground challenging his plea-based conviction of one count of trafficking cocaine (Case No. 01-2322) entered in the Twentieth Judicial Circuit Court, in Collier County, Florida. Petition at 1. Pursuant to this Court's Order, Respondent filed a Response (Doc. #15, Response) in opposition to the Petition and attached supporting exhibits (Doc. #16, Exhs. 1-18) consisting of the trial court's records and Petitioner's post-conviction

---

[1] The Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y, Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008), abrogated on other grounds, Wall v. Kholi, No. 09-868, ___ S. Ct. ___, 2011 WL 767700 (Mar. 7, 2011).

records.[2] Petitioner filed a Reply (Doc. #20, Reply) in opposition to the Response. This matter is ripe for review.

## I. Procedural History

### A. Trial Court Proceedings

By an Information dated October 23, 2001, Petitioner was charged with violating Fla. Stat. § 893.135(1)(b). Exh. 1. The Information alleged that on or about September 20, 2001, Petitioner did unlawfully and knowingly have, in his actual or constructive possession, a controlled substance, to-wit: 400 grams or more of cocaine or of any mixture containing cocaine. Id.

Petitioner entered a *nolo contendere* plea as charged pursuant to a negotiated plea agreement. Exh. 2. On June 18, 2002, the trial court held the plea colloquy at which Petitioner was placed under oath, id. at 71; stated he was not under the influence of drugs, alcohol, controlled substances, or medication, which affected his ability to understand, id. at 72-73; stated he understood what he was doing in court, id. at 72, and, stated he understood the rights he was waiving by pleading *nolo contendere* to the charge, id. at 73.

---

[2]The page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system. Respondent's exhibits, however, were filed in paper format and not electronically scanned. Therefore, the Court refers to a particular document by the corresponding number of the exhibit (Exh. 1-18) and the bates stamp number for the pinpoint citation.

Petitioner also stated there were no promises made to him other than what had been stated in court, id. at 72, and identified the plea agreement that he signed, id. at 73. Petitioner testified that he understood the plea agreement, and that he was satisfied with his attorney, id. at 72-73. Petitioner affirmed that he understood that, pursuant to the plea form, he was pleading *nolo contendere*, and that the maximum sentence for the crime was thirty-years in prison, and that there was a minimum-mandatory sentence of fifteen-years in prison, and a $250,000 fine, id. at 72. Defense counsel stipulated to the factual basis for the charge presented by the State, id. at 73. Petitioner stated that he had no questions about the plea agreement, id. at 74.

The trial judge then examined Petitioner and confirmed that Petitioner understood the charges and consequences of his plea, and that he had no questions. Id. At the conclusion of the plea colloquy, the trial court accepted Petitioner's *nolo contendere* plea, found that he entered the plea freely and voluntarily, adjudicated him guilty on the charge, and deferred sentencing until October 11, 2002. Id. On January 15, 2004, in accordance with the plea, the trial court sentenced Petitioner to thirteen-years in prison.[3] Exh. 3.

---

[3] From the date Petitioner entered his plea until when he was sentenced, Petitioner remained out of jail on bond for approximately two years because of the substantial assistance agreement.

**B. Motion to Withdraw Plea**

On January 28, 2004, Petitioner filed a motion to withdraw his plea raising two grounds for relief: (1) that the plea was involuntary because he was under duress by the idea that if he did not enter a plea, he would have received a sentence of thirty years; and (2) that defense counsel rendered ineffective assistance by failing to move to suppress evidence. Exh. 4.

On February 12, 2004, the trial court entered an order denying Petitioner's motion to withdraw his plea on the merits. Exh. 5. Petitioner appealed the trial court's order of denial, Exh. 6, but later voluntarily dismissed his appeal. Id. On August 5, 2004, the appellate court dismissed Petitioner's appeal based on his voluntary dismissal. Exh. 7; Simpson v. State, 880 So. 2d 1228 (Fla. 2d DCA 2004)[table].

**C.  Rule 3.850 Motion**

While Petitioner's aforementioned appeal was pending before the appellate court, Petitioner filed a *pro se* post-conviction motion pursuant to Florida Rule of Criminal Procedure 3.850 (hereinafter "Rule 3.850 Motion") on July 26, 2004. Exh. 8. Petitioner raised five grounds of ineffective assistance of counsel. Id. at 1-14. The post-conviction court ordered an evidentiary hearing on all claims. Exh. 9. The evidentiary hearing was held on February 21, 2007. Exh. 10. After conducting

the evidentiary hearing, the post-conviction court entered an order denying Petitioner relief on all grounds. Exh. 11.

Petitioner appealed the post-conviction court's order of denial, specifically with regards to grounds three and five of his Rule 3.850 Motion. Exh. 12. On appeal, Petitioner argued that the post-conviction court erred by denying him relief on: ground three- that trial counsel rendered ineffective assistance by failing to move to suppress evidence illegally obtained; and, ground five- trial counsel rendered ineffective assistance by failing to prepare a defense and failing to make various pretrial motions. See generally id.; Exh. 8. The State filed a brief in response. Exh. 13. Petitioner filed a reply. Exh. 14. The appellate court entered an order *per curiam* affirming the post-conviction court's order. Exh. 15; Simpson v. State, 978 So. 2d 172 (Fla. 2d DCA 2008)[table]. After the appellate court denied Petitioner's motion for rehearing, mandate issued on April 2, 2008. Exhs. 16-18.

## II.  Applicable § 2254 Law

Petitioner filed his timely[4] Petitioner after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001). Consequently, post-AEDPA law governs this

---

[4]Respondent concedes that the Petition is timely filed, Response at 4, and the Court agrees.

action.   Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. Alston v. Fla. Dep't of Corr., 610 F.3d 1318, 1325 (11th Cir. 2010)(citations omitted).  AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002) (quoting Williams v. Taylor, 529 U.S. 362, 403-404 (2000)).  The following legal principles apply to this case.

**A.   Deference to State Court Decision**

A federal court must afford a high level of deference to the state court's decision. Harrington v. Richter, ____ U.S. _____, 131 S. Ct. 770, 786-787 (2011).  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See Berghuis v. Thompkins, 130 S. Ct. 2250, 2259 (2010).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Blankenship v. Hall, 542 F.3d 1253, 1271

(11th Cir. 2008); Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002).  When the last state court rendering judgment affirms without explanation, the Court presumes that it rests on the reasons given in the last reasoned decision. Powell v. Allen, 602 F.3d 1263, 1268 n.2 (11th Cir. 2010)(citing Ylst v. Nunnemaker, 501 U.S. 797, 803-05 (1991)).

"[C]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown v. Payton, 544 U.S. 133, 141 (2005); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003). It is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedent if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable," a substantially higher threshold. Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)(citations omitted). Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004).

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). A factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has not yet decided whether a

petitioner must establish only that a factual finding is unreasonable, or must also rebut the presumption. Wood v. Allen, 130 S. Ct. 841, 848 (2010). In any event, the statutory presumption of correctness "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. Williams v. Allen, 598 F.3d 778, 788 (11th Cir. 2010); Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir. 2006), cert. denied, 542 U.S. 913 (2006).

**B.  Ineffective Assistance of Counsel**

The Supreme Court has recently discussed the application of the relevant legal principles in the context of a claim of ineffective assistance of counsel because counsel failed to file a motion to suppress prior to advising defendant to enter of plea of no contest. Premo v. Moore, ___ U.S. ___, 131 S. Ct. 733 (2011). To establish ineffective assistance of counsel "a defendant must show both deficient performance [by counsel] and prejudice." Knowles v. Mirzayance, 556 U.S. ____, 129 S. Ct. 1411, 1419 (2009) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). In addressing this standard and its relationship to AEDPA, the United States Supreme Court recently provided the following explanation:

> To establish deficient performance, a person challenging a conviction must show that 'counsel's representation

fell below an objective standard of reasonableness.'
[ ]. A court considering a claim of ineffective
assistance must apply a 'strong presumption' that
counsel's representation was within the 'wide range' of
reasonable professional assistance. [ ] The challenger's
burden is to show 'that counsel made errors so serious
that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment.' [ ]

With respect to prejudice, a challenger must demonstrate
'a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would
have been different. A reasonable probability is a
probability sufficient to undermine confidence in the
outcome.' [ ] . . . .

'Surmounting Strickland's high bar is never an easy
task.' [ ] An ineffective-assistance claim can function
as a way to escape rules of waiver and forfeiture and
raise issues not presented at trial [or in pretrial
proceedings], and so the Strickland standard must be
applied with scrupulous care, lest 'intrusive post-trial
inquiry' threaten the integrity of the very adversary
process the right to counsel is meant to serve. [ ] Even
under *de novo* review, the standard for judging counsel's
representation is a most deferential one. Unlike a later
reviewing court, the attorney observed the relevant
proceedings, knew of materials outside the record, and
interacted with the client, with opposing counsel, and
with the judge. It is 'all too tempting' to
'second-guess counsel's assistance after conviction or
adverse sentence.' [ ] The question is whether an
attorney's representation amounted to incompetence under
'prevailing professional norms,' not whether it deviated
from best practices or most common custom. [ ]

Establishing that a state court's application of
Strickland was unreasonable under § 2254(d) is all the
more difficult. The standards created by Strickland and
§ 2254(d) are both 'highly deferential,' [ ], and when
the two apply in tandem, review is 'doubly' so, [ ]. The
Strickland standard is a general one, so the range of
reasonable applications is substantial. [ ]. Federal
habeas courts must guard against the danger of equating
unreasonableness under Strickland with unreasonableness
under § 2254(d). When § 2254(d) applies, the question is
not whether counsel's actions were reasonable. The

>    question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 131 S. Ct. at 787-788 (internal citations omitted).

### III. Discussion

**A. Federal Evidentiary Hearing**

The Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 550 U.S. at 474; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

**B. Whether Counsel Rendered Ineffective Assistance Due To Failure to Move to Suppress Evidence**

Petitioner argues that trial counsel rendered ineffective assistance for failing to move to suppress evidence the police obtained by an illegal search of his vehicle. Petition at 4. Specifically, Petitioner states that he told his defense counsel that he did not commit any traffic infraction, specifically failure to maintain a single lane, and the police officer's probable cause affidavit for the stop of his vehicle was wrong. Memorandum at 7.

Petitioner states that it was after his "illegal" stop, that the drug dog found "a large amount of cocaine" in the trunk. Id.

The record shows that Petitioner understood the charges against him, understood the consequences of his *nolo contendere* plea, and voluntarily chose to plead *nolo contendere*, without being coerced to do so. There is nothing in the record that suggests Petitioner's plea or admissions in open court were anything but the truth, and Petitioner's statements under oath during a plea colloquy carry a strong presumption of truth. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994)(citing United States v. Gonzalez-Mercado, 808 F.2d 796, 801 (11th Cir. 1987)). Petitioner's claim of ineffective assistance of counsel, raised in his Rule 3.850 Motion as ground three Exh. 8 at 6, is without merit. After holding an evidentiary hearing on this claim, the post-conviction court denied Petitioner relief, finding:

> [Petitioner] testified at the hearing that the police officer who pulled him over engaged in "profiling;" [Petitioner] claims that the search was a result of a pretextual stop. He further stated that this particular officer was under investigation for profiling, and that [Petitioner] had a legally meritorious basis for a motion to suppress. [Petitioner] testified that his attorney failed to investigate this issue and failed to make a motion to suppress.
>
> Attorney Simpson[5] testified that he knew of the allegations made against the officer, that he had consulted with other attornies regarding the officer's

---

[5]Petitioner's surname is the same as defense counsel's surname. Thus, to avoid any confusion, the Court refers to Petitioner solely as "Petitioner."

-12-

> conduct and had learned of the investigation, and that there was no need to depose the officer as the attorney had acquired enough evidence through discovery.
>
> Attorney Simpson further stated that he made a strategic decision not to make a motion to suppress. He testified that he believed, based on his experience and his reading of the discovery, that the only way to get [Petitioner] out of jail was for the [Petitioner] to agree to cooperate with law enforcement. He also stated that typically when counsel files a motion to suppress, he gives up the option of a substantial assistance agreement.
>
> With regards to issues of trial strategy, the court gives deference to the strategic decisions of trial counsel, even if they are unsuccessful, and generally such decisions do not constitute ineffective assistance of counsel. Gordon v. State, 863 So. 2d 1215, 1222-1223 (Fla. 2003); Gonzales v. State, 691 So. 2d 602 (Fla. 4th DCA 1997). More specifically, "[s]tragetic decisions do not constitute ineffective assistance if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.'" Stewart v. State, 801 So. 2d 59, 65 (Fla. 2001)(quoting Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000)). Defendant has the burden of proving that trial counsel's approach "would have been used by no professionally competent counsel." State v. Williams, 797 So. 2d 1235, 1239 (Fla. 2001)(citing Harich v. Dugger, 844 F.2d 1469 (11th Cir. 1988)). [Petitioner] has failed to meet this burden, thus, **Ground 3** is DENIED.

Exh. 11 at 35-36 (emphasis in original). Petitioner appealed the adverse result, Exh. 12. After briefing by the parties, the appellate court *per curiam* affirmed the post-conviction court's decision on this claim. Exh. 15.

The Court finds that, given the evidence presented at the state court hearing, the State courts' factual determinations are not unreasonable. The State courts' decisions are also not contrary to, or an unreasonable application of clearly established

federal law. The State court applied Florida precedent which was the same standard set forth in Strickland and reasonably applied this standard to the facts of this case.

During the evidentiary hearing, defense counsel testified that he was a defense attorney for 33 years and had handled approximately 500 trafficking cases. Exh. 10 at 137-38. In October 2001, counsel met with Petitioner, discussed the facts of the case and the issues, and was aware of the facts in the booking sheet. Id. at 139. From the booking sheet, counsel was aware of the facts about the stop and was aware that Petitioner had made certain admissions at the scene. Id.

Defense counsel testified that he considered filing a motion to suppress, but believed that the only way Petitioner was going to get the matter favorably resolved was to cooperate, particularly because of the confession Petitioner had made. Id. Defense counsel testified that it had been his experience that the State would not agree to a substantial assistance, if he filed a motion to suppress. Therefore, as Petitioner's defense counsel, a choice was made between filing a motion to suppress and negotiating for a substantial assistance agreement. Id. at 139-140.

Defense counsel further testified that he reviewed the evidence and facts, and did not think the stop in this case was illegal. Id. at 146. Counsel acknowledged that he knew about the Crooks case, had heard the word on the street about Officer

Deutsch, had in fact filed a motion to suppress in another case involving Officer Deutsch, but determined in this case that it was not worth filing a motion to suppress. Id. at 146, 151-53. Counsel further acknowledged that Petitioner could have entered into a plea, reserving the right to appeal if he had filed a motion to suppress and lost, but Petitioner would have had to stay in jail the whole time. Id. Defense counsel testified that it was important to Petitioner to get out of jail. Id. at 142. And, the only way to get Petitioner out of jail was to negotiate a substantial assistance agreement, enter a plea, and not file a motion to suppress. Id. at 153.

The post-conviction court reasonably found that defense counsel's actions did not amount to deficient performance and deferred to defense counsel's trial strategy. See Exh. 11. As a practicing defense attorney for 33 years and having handled approximately 500 drug trafficking cases, defense counsel certainly had "insights borne of past dealings with the same prosecutor or court." Premo, 131 S. Ct. at 741. Defense counsel explained that he did not have a good faith basis to file a motion to suppress and further justified his decision to enter in a substantial assistance agreement in order for Petitioner to get out of jail. "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic

choices in balancing opportunities and risks." Id. at 741. Petitioner has not met his burden under § 2254(d).

Further, Petitioner has not shown that but for counsel's errors, he would have not have entered the plea and would have insisted on going to trial. At the time Petitioner entered his plea, he knew that defense counsel was not filing a motion to suppress. Although in hindsight Petitioner may not be pleased that the substantial assistance agreement did not have the result he anticipated, that was part of the risk taken when he entered a plea, instead of going to trial. Further, Petitioner acknowledged during the plea colloquy that if he was convicted at trial, he could have received up to a thirty-year sentence. Significantly, because defense counsel convinced the judge at sentencing to give Petitioner some credit for his efforts with the substantial assistance agreement, Petitioner was sentenced to thirteen years, instead of the fifteen-year minimum mandatory. Based on the foregoing, the Court finds that the State court's decision involved no unreasonable application of Supreme Court precedent and was not an unreasonable determination of the facts in light of the evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED.**

2. The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition writ of habeas has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Harbison v. Bell, ___ U.S. ___, 129 S. Ct. 1481, 1485 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this __29th__ day of March, 2011.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record